FILED'09 NOV 18 15:15 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT R. PARKINS II,                                    Civil No. 09-6015-CL

      Plaintiff,                                  REPORT AND RECOMMENDATION

        v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

      Defendant.


CLARKE, Magistrate Judge.

      Plaintiff Robert R. Parkins II brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. §§ 405(g), to obtain judicial review of the

Commissioner's final decision denying plaintiff's applications for supplemental security income

benefits. For the reasons explained, the decision of the Commissioner should be reversed and

remanded for further proceedings.

## **BACKGROUND**

      Plaintiff applied for benefits alleging disability commencing May 1, 2001. His

applications were denied. Plaintiff requested a hearing, which was held before an Administrative

Law Judge (ALJ) on March 6, 2007. Plaintiff, represented by counsel, appeared and testified, as

did a medical expert and vocational expert.  On March 30, 2007, the ALJ rendered an adverse decision.  The Appeals Council granted plaintiff's request for review and issued an unfavorable decision on November 17, 2008, making the Appeals Council's decision the final decision of the Commissioner.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (and authorities cited).

At the time of plaintiff's hearing and the ALJ's decision, plaintiff was thirty-six years old. Plaintiff took special education classes throughout his schooling and completed the ninth or tenth grade.  Plaintiff has no past relevant work experience.  Plaintiff alleges disability as of May 1, 2001, based upon a combination of cognitive disorder, severe major depressive disorder, borderline intellectual functioning, bipolar disorder, and personality disorder.  The relevant medical evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the record as a whole, and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858

2 - REPORT AND RECOMMENDATION

n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the

record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933

F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are

supported by substantial evidence, "the decision should be set aside if the proper legal standards

were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d

532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under

sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and

transcript record, a judgment affirming, modifying, or reversing the decision of the

Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v.

Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate

an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §

423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled.

Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial

gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the

present case, the Appeals Council agreed with the ALJ that plaintiff had not engaged in substantial gainful activity since October 23, 2003. (Tr. 12, 14, see Tr. 22.)

In step two, the Commissioner determines whether the claimant has "a medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the Appeals Council agreed with the ALJ's finding that plaintiff's borderline intellectual functioning, bipolar disorder, and personality disorder constitute severe impairments. (Tr. 12, 14, see Tr. 22.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the Appeals Council agreed with the ALJ that plaintiff does not have an impairment or combination of  impairments which meet or are medically equal in severity to one of the listed impairments. (Tr. 12, 14, see Tr. 22.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in

an ordinary work setting for eight hours a day, five days a week.  Social Security Ruling (SSR) 96-8p.  The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments.  Id.  In this case, the Appeals Council found that the RFC found by the ALJ is supported by the record, that is, that plaintiff has the RFC to perform simple, repetitive tasks; with no public contact; occasional co-worker contact, but no teamwork; and no more than occasional contact with supervisors.  (Tr. 13, 14, see Tr. 23.)  The Appeals Council agreed with the ALJ that plaintiff does not have any past relevant work.  (Tr. 12, 13, 14, see Tr. 25.)

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this burden, then the claimant is deemed disabled.  Here, the Appeals Council agreed with the ALJ that a person of plaintiff's age, education, lack of past relevant work experience, and residual functional capacity could still perform work that exists in significant numbers in the national economy as identified by the vocational expert.  (Tr. 12, 13-14, see Tr. 25-26.)  Therefore, the Appeals Council adopted the ALJ's conclusion that plaintiff was not under a disability.  (Tr. 11, 14, see Tr. 20, 26.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence and contains errors of law.  Plaintiff contends that (1) the ALJ and the Appeals Council erred by failing to address the entire opinion of examining psychologist Dr. Truhn regarding his mental limitations; (2) the ALJ failed to give clear and convincing reasons

5 - REPORT AND RECOMMENDATION

for rejecting his testimony; and (3) the Commissioner failed to meet his burden of proving that plaintiff retains the ability to perform other work in the national economy.

**Dr. Truhn's Opinion**

Plaintiff contends that the ALJ and the Appeals Council erred by failing to address Dr. Truhn's conclusions that plaintiff has a cognitive disorder and a severe major depressive disorder, and Dr. Truhn's conclusion that plaintiff would be limited to working in a sheltered workshop setting. Defendant contends that the Appeals' Council's assessment of Dr. Truhn's opinion is free of legal error because Dr. Truhn's diagnoses did not create a material conflict in the medical evidence and because his work-related assessment was properly addressed.

Generally, the Commissioner gives more weight to the opinion of a treating source or examining source than to a source who has not treated or examined a claimant. 20 C.F.R. §§ 404.1527(d)(1)(2), 416.927(d)(1)(2); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986);

Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989).  Further, the opinion of an examining

physician is entitled to greater weight than the opinion of a nonexamining physician.  Lester, 81

F.3d at 830.

Plaintiff was referred to David R. Truhn, Psy.D., for a comprehensive psychological

examination to determine the impact of his psychological functioning on his ability to maintain

employment.  Plaintiff saw Dr. Truhn on May 16, 2001.  Plaintiff reported that he was unable to

work because he was experiencing emotional lability and his emotions swing from being tired to

anger.  He stated he becomes angry easily in the work place and has difficulty with authority

figures.  (Tr. 181-82.)  Plaintiff told Dr. Truhn that he's had episodes of depression throughout

his life.  During the past year he had had seven episodes of depression which generally last from

a couple of days to two weeks; he last experienced depression two months previously which

lasted for two weeks.  His symptoms of depression include sleeping disturbances, decreased

appetite, and a tendency to isolate.  Plaintiff said that Lithium helped with episodes where one

minute he feels "'real good'" and then a "'split second later'" he becomes angry.  He reported that

he has heard a muffled voice calling his name at times, but not on a regular basis.  He stated he

has been "'kind of a paranoid person'" most of his life, which leads him to not want to be around

people.  (Tr. 182.)  Plaintiff reported that he had had six jobs in his life, all of which lasted less

than two weeks.  He usually feels embarrassed and would walk off three to four jobs, and had

been fired for not showing up for work.  He stated he does not associate with co-workers and he

gets along with supervisors "'as long as they talk to me like I'm a human being.'"  His anger and

range of emotions in the work setting can be disruptive to relationships with co-workers and

supervisors. (Tr. 184.) Plaintiff thinks he has memory problems and is very forgetful. He thinks

he was diagnosed in 1988 with '"organic brain syndrome.'" (Tr. 185.)

In the mental status examination section of his report, Dr. Truhn stated that plaintiff had

very slow response during a test of knowledge and use of vocabulary words and might have had

processing problems. Plaintiff reported he'd '"always'" had comprehension problems. Dr. Truhn

stated that testing took approximately 35% longer than the usual administration by him. (Tr.

181.)

In the psychometric testing section of his report, Dr. Truhn stated that plaintiff scored in

the borderline range on tests measuring knowledge of common sense reasoning and ability to

solve day to day problems, mathematical abilities and concentration, and knowledge and use of

vocabulary words. On a test measuring abstract reasoning, plaintiff scored in the mentally

deficient range. Plaintiff scored in the low average range on tests measuring short-term memory,

general fund of knowledge, and long-term memory. Dr. Truhn found that testing indicated that

plaintiff would have significant difficulty with written material and his low score might be

indicative of a learning disorder of written expression. He found that testing indicated that

plaintiff's abstract abilities are very weak, and information would be best presented to plaintiff in

a repetitious and slow fashion. Testing also was indicative of cognitive deficits. (Tr. 186.)

As relevant here, Dr. Truhn's Axis I diagnoses were cognitive disorder NOS; major

depressive disorder, recurrent, severe, without psychotic features; and bipolar II disorder, most

recent episode depressed. His Axis II diagnoses were antisocial personality disorder with

borderline and obsessive compulsive features; and borderline intellectual functioning. He found

8 - REPORT AND RECOMMENDATION

a current GAF of 36.[1]  Dr. Truhn recommended continued monitoring and possible supervision

of plaintiff's medications; participation in individual psychotherapy and in a day treatment

program to help structure his time and provide intervention to treat his mood swings and

difficulty with authority figures, which might increase his appropriate social contacts; and

participation in activities for individuals with organic brain syndrome.  Dr. Truhn concluded his

summary and recommendation section of his report with:

> It seems that his vocational activities at this time would be limited to a sheltered
> workshop setting.  A sheltered workshop would offer him an ability to work on
> issues regarding co-workers and supervisors in a supportive therapeutic setting.
> His pace if very slow and he may be able to work on improving his pace.

(Tr. 188.)  Dr. Truhn opined that plaintiff's prognosis is guarded.  He found that plaintiff seems

to suffer from chronic problems related to personality disorder and possible head injury, and that

his mood swings may possibly be one of the symptoms of the personality disorder, but may

respond to long-term therapeutic intervention and use of medications.  (Tr. 187-88.)

  The Appeals Council did not address any physician's or psychologist's opinions in its

decision other than to note the medical expert's testimony given at the hearing.  It adopted the

ALJ's decision as to the medical evidence, and noted the medical expert's testimony.  In his

decision, the ALJ did not refer to Dr. Truhn by name, but referred to his diagnosis of borderline

intellectual functioning and his diagnosis of personality disorder only, referencing his report by

---

[1]    A GAF of 36 means "**Some impairment in reality testing or communication** (e.g., speech
is at times illogical, obscure or irrelevant) **OR major impairment in several areas, such as work or
school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects
family, and is unable to work; child frequently beats up younger children, is defiant at home, and is
failing at school).  American Psychiatric Association, Diagnostic and Statistical Manual of Mental
Disorders (4th Ed. 1994) at 32.

exhibit number (exhibit 2F), and apparently accepting the cited diagnoses. However, as the authorities above provide, the ALJ may not disregard an examining psychologist's opinion without providing reasons for doing so. Here, the ALJ did not mention Dr. Truhn's diagnosis of cognitive disorder or his diagnosis of major depressive disorder, recurrent, severe, without psychotic features. Nor did he mention Dr. Truhn's opinion that plaintiff was limited at the time to a sheltered workshop setting where he could work on issues regarding co-workers and supervisors and work on improving his pace. The ALJ may not avoid applicable requirements simply by not mentioning the examining psychologist's opinion and making findings contrary to the opinion. See Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (treating physician's opinion). Id.

Defendant agrees that he must provide clear and convincing reasons to reject the uncontradicted opinion of an examining physician but contends that he is not required to discuss evidence that does not create a material conflict in the record. Defendant argues that Dr. Truhn's diagnoses of cognitive disorder and major depressive disorder did not create a conflict in the medical evidence. Defendant also contends that Dr. Truhn's opinion that plaintiff was limited to limited to a sheltered workshop setting was a recommendation, not an imperative, which need not be adopted if an appropriate alternative is available. He contends that, as such, the work-related assessment was appropriately addressed by the Appeals Council. Defendant cites the opinion of agency consultant Frank Lahman, Ph.D., who reviewed Dr. Truhn's report and included it in his summary attached to a Psychiatric Review Technique Form and RFC Assessment - Mental completed by him and dated April 2004. The ALJ and Appeals Council

both stated the RFC found by them was in accordance with the non-examining state agency doctor's opinion.

The court is not persuaded by defendant's contentions. Defendant's somewhat convoluted arguments that Dr. Truhn's diagnoses of cognitive disorder and major depression were incorporated into the determined impairments of borderline intellectual functioning and bipolar disorder, respectively, and covered by the opinion of Dr. Lahman, the agency's non-examining consultant, is irrelevant because neither the ALJ nor the Appeals Council addressed Dr. Truhn's opinion in this regard so as to reject his opinion. The Commissioner may not rely on a rationale that was not set forth by the ALJ or Appeals Council. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (Ninth Circuit cannot rely on independent findings of district court but is constrained to review reasons the ALJ asserts; error for district court to affirm credibility decision based on evidence ALJ did not discuss) (and cases cited). It seems clear from Dr. Truhn's report that it is his opinion that plaintiff is limited to a sheltered work setting work environment. This issue was not discussed by the ALJ or Appeals Council in any way. The fact that the non-examining agency consulting psychologist included a reference to a sheltered workshop in his summary of the medical history is not a substitute for the ALJ's consideration of the evidence including Dr. Truhn's opinion in this regard and a decision whether to adopt the opinion or reject it. Because neither the ALJ nor the Appeals Council discussed these opinions of Dr. Truhn and gave no reasons to reject these opinions, the Commissioner's decision should be reversed on this issue.

//

//

11 - REPORT AND RECOMMENDATION

**Plaintiff's Testimony**

Plaintiff contends that the ALJ erred by rejecting his testimony without providing clear and convincing reasons. He argues that neither the Appeals Council nor the ALJ rejected his testimony that he sees spirits and neither addressed his primary symptom of anxiety. Defendant responds that the evaluation of plaintiff's credibility was free of legal error.

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p. The first stage is the Cotton test, Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. See SSR 96-7p. Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject a claimant's symptom testimony regarding the severity of symptoms "only if he makes specific findings stating clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (and cases cited). General findings are insufficient; rather, the ALJ must identify what testimony is not credible, and what evidence suggests that the testimony is not credible. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's

symptom testimony solely because it is not fully corroborated by objective medical findings.

Cotton, 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider, for example:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . .  In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . .  Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

Here, plaintiff has produced objective evidence of an impairment which could produce some degree of the symptoms alleged.  There is no evidence of malingering in the record.

The ALJ found that, while plaintiff has medically determinable impairments which could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely credible.  (Tr. 25.)  The Appeals Council agreed with the ALJ's findings and supplemented the credibility assessment in its decision.[2]

At the hearing, plaintiff testified that he's had a hard time being at jobs in the past "due to, maybe dealing with people around me where I'd end up just kind of walk, walking away."  (Tr.

---

[2]    The Appeals Council expunged certain exhibits from plaintiff's record which the ALJ relied on in his decision.  These records belonged to another individual and referenced certain physical limitations.  (Tr. 12, see Tr. 24-25.)

13 - REPORT AND RECOMMENDATION

584.) He testified that he has a problem with hearing voices and sometimes seeing spirits. Plaintiff testified that he feels this has caused him to lose some jobs; he'd end up "going like in a blackout type situation I guess," and would end up "somewhere else and kind of confused or whatever." (Tr. 584.) He stated the spirits he sees are "bear minimal . . . Once or twice a week." (Tr. 586.) He described the spirits he sees as: "some type of supernatural or something, I don't know how to really describe them. They're kind of like this is real people but like they're kind of transparent a little bit." (Tr. 586.) The last time he'd heard voices was a week to a week and one-half before the hearing. Most of the time he hears music and sometimes he'll hear a whisper calling his name. (Tr. 584-86.) His parole officer knows plaintiff's situation and is not requiring him to look for work. When plaintiff was in prison, he was put in "the hole," similar to solitary confinement where he was in a cell by himself, for fighting and misbehaving, because of trouble with inmates and guards; the last time he was in prison, he didn't go to the hole. (Tr. 588.) With his medications, plaintiff still has problems but, for the most part, they work "real good." (Tr. 586.) Plaintiff goes off his medication, in part, because he forgets to take it or the spirits are trying to tell him to stop taking them so he can recognize the spirits more; when he's on his meds plaintiff doesn't see them as much and he thinks they get mad. At the time of the hearing, he was taking his meds; with the help of his girl friend, he has a pill container and marked calendar which helps him. Plaintiff has lost a job in the past because

> I would just end up, just end up walking off for no apparent reason. I think, think it's because it's at the times that I, that I feel that the spirits are trying to communicate with me or they are communicating with me, is when I go in my blackout states because I end up doing, going to do one thing and then all of a sudden I end up, end up somewhere else, not, not realizing how I got there or where, where I was.

14 - REPORT AND RECOMMENDATION

(Tr. 591.) He had not yet had a blackout since he's been released from prison. Plaintiff spends his days at home being a homebody, not doing much. He tries to take care of the house, such as laundry and dishes. He draws a couple of hours; he draws for five to ten minutes and then has to leave it and go back because he is not able to focus. He doesn't meet friends outside of his house and does not have visitors that come to the house. He isolates himself; when he's around a lot of people, it's hard to tell sometimes whether the spirits are out there or if it's someone else, so he gets anxiety at times and feels miserable and panicky for five to ten minutes. When he leaves the house, it's usually with his girlfriend. They go grocery shopping. (Tr. 582-91.)

It appears that the ALJ adopted the DOC mental health evaluator's statement that plaintiff's symptoms of shadowy visions and auditory hallucinations were accounted for by his environment in the jail rather than a psychotic process. However, the record shows that plaintiff continues to see spirits, even at the time of the hearing. The Appeals Council acknowledges that plaintiff continues to see spirits.

The ALJ relied on plaintiff's activities of daily living to discount his testimony, citing plaintiff's ability to handle money, ride his bicycle, attend to basic household tasks, use public transportation, read, and watch television. The Appeals Council noted that plaintiff worked at odd jobs, and displayed "'excellent fathering skills'" at a doctor's appointment when he had his young daughter with him. However, none of these activities suggest that plaintiff has the ability to perform competitive work for eight hours a day and they are not inconsistent with disability. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (and cases cited); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). The Court finds that this reason is not reasonable on this record and is not supported by substantial evidence.

15 - REPORT AND RECOMMENDATION

The ALJ and the Appeals Council reference appointment records indicating that plaintiff was oriented, well groomed, attentive, alert, with good eye contact and normal mental status. To the extent that this reason was relied on to discount plaintiff's testimony, the Court finds it not supported by substantial evidence. As plaintiff points out, other progress notes–some during the same time period–indicate that, while plaintiff may have been attentive and alert, he also was at times fidgety, anxious, angry, tense, irritable, annoyed, and rocking. (Tr. 225, 241, 242, 244, 247, 248, 250, 265, 268.)

Both the ALJ and the Appeals Council discounted plaintiff's testimony because plaintiff's symptoms are controlled with medication. A good response to treatment supports an adverse credibility finding. See Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996); Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008). This reason constitutes a clear and convincing reason which is supported by substantial evidence.

The court has found that not all reasons given by the ALJ for discrediting plaintiff's testimony were proper. However, even though not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination will be sustained if the determination is supported by substantial evidence. Batson v. Commissioner, Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). On this record, the court finds that the Appeals Council's did not provide sufficient reasons to discount plaintiff's allegations and its credibility determination is not supported by substantial evidence.

//

//

**Step five determination**

Plaintiff contends that the Commissioner fails to meet the step five burden because, despite accepting the medical expert's testimony that plaintiff's history shows a marked level of difficulty maintaining social functioning, the Appeals Council did not address the vocational expert's opinion that even moderate limitation in the ability to deal with a supervisor would preclude employment; and the Appeals Council failed to consider Dr. Truhn's opinion that plaintiff was limited to a sheltered workshop environment. Defendant responds that the ALJ's step five determination is supported by substantial evidence.

An ALJ may rely on the testimony of a vocational expert that is elicited with a hypothetical question that sets forth all the limitations of the claimant. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The assumptions in the hypothetical question must be supported by substantial evidence. Id. The ALJ may not incorporate limitations or restrictions that are not supported by the record. SSR 96-8p. A hypothetical which fails to include all of a claimant's limitations does not constitute substantial evidence to support a finding that the claimant can perform jobs in the national economy. Magallanes, 881 F.2d at 756; Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988); Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).

The medical expert, Dr. John Crossen, testified at the hearing that plaintiff's problems maintaining social functioning appear to be very prominent; he testified, by history, he would place them as "marked." (Tr. 598.) Dr. Crossen's testimony of a marked level at the time had to do with isolation more than aggressiveness.

The ALJ posed a hypothetical to the vocational expert (VE) in which an individual of 36 years of age with a ninth grade education and no past relevant work who is limited to simple,

17 - REPORT AND RECOMMENDATION

routine tasks and instructions, should have no public contact, could have occasional coworker

contact by no teamwork, and occasional supervisory contact–enough that the individual would be

guided by a supervisor.  The VE identified several jobs the person could perform.  Plaintiff's

counsel posed a second hypothetical in which the individual was argumentative with supervisors

and coworkers, a limitation seemingly established by Dr. Crossen's testimony that plaintiff would

have marked limitations in social functioning, even if the interaction with the supervisor was

only on an occasional basis.  The VE responded that her experience is that people have to be able

to deal with the supervisor, and "even a moderate limitation in the, with the inability to deal with

the supervisor is going to preclude employment."  (Tr. 605.)

The ALJ found that plaintiff had marked difficulties in maintaining social functioning.

(Tr.  22.)  The Appeals Council adopted the ALJ's decision and, remarking that it was not noted

in the record, noted the medical expert's testimony and found Dr. Crossen's limitations consistent

with the decisional residual functional capacity.  (Tr. 13.)

In light of the VE's testimony  that certain jobs were available in response to the ALJ's

hypothetical, and her testimony that even a moderate limitation in the ability to deal with a

supervisor would preclude employment, it is clear that the limitation of marked difficulties in

social functioning, accepted and found by the ALJ and adopted by the Appeals Council, was not

included in the hypothetical or the RFC ultimately found by the Commissioner.

In addition, the court has found that the Commissioner's decision should be reversed

because neither the ALJ nor the Appeals Council addressed Dr. Truhn's opinion that plaintiff is

limited to a sheltered work setting work environment.  This limitation was not included in a

hypothetical and the VE offered no testimony relating to such a limitation.

18 - REPORT AND RECOMMENDATION

Accordingly, the Commissioner's decision should be reversed based on the step five determination since it is not supported by substantial evidence.

**Conclusion**

The court has found that the ALJ and the Appeals Council failed to discuss Dr. Truhn's opinions; the ALJ and the Appeals Council did not provide clear and convincing reasons to discount plaintiff's testimony; and the ALJ and the Appeals Council did not include in the hypothetical all limitations of plaintiff such that the step five determination is not supported by substantial evidence. On the record before it, the court finds that a remand is warranted to address these deficiencies.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this opinion.

_This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals_. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. _Objections to this Report and Recommendation, if any, are due by December 7, 2009. If objections are filed, any responses to the objections are due within 10 days, see_ Federal Rules of Civil Procedure 72 and 6. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the

factual issues and will constitute a waiver of a party's right to appellate review of the findings of

fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___ day of November, 2009.

_____

MARK D. CLARKE
United States Magistrate Judge

20 - REPORT AND RECOMMENDATION